OPINION
{¶ 1} Plaintiff-appellant, Auto-Owners Mutual Insurance Company ("Auto-Owners"), appeals from the Warren County Common Pleas Court's decision rendering summary judgment in favor of defendants-appellees, Indoor Courts of America, Inc. ("Indoor Courts"), and Rebel Inc. ("Rebel"), with respect to Auto-Owners' subrogation action.
 {¶ 2} The Tom Harrison Tennis Center, Ltd. ("THTC"), owned by Tom Harrison, is an indoor, asphalt tennis court, located at 80 Commercial Way in Springboro, Warren County, Ohio. THTC's building is constructed of fabric placed over a steel frame.
 {¶ 3} In July 1998, Harrison contracted with Indoor Courts to install insulation and a liner on the underside of the roof of THTC's building in order to control a condensation problem. Indoor Courts, in turn, contracted with Rebel to perform the installation. Rebel's employees Kurt Buckingham and Duane Hobs installed the insulation and liner over a five or six-night period, using hangers, hooks, clamps and tubing.
 {¶ 4} On November 10, 1998, Harrison saw that a support tube near the peak of the facility's ceiling was hanging down. Over the next two hours, Harrison watched as the hanging support tube along with portions of the insulation and liner fell down from the ceiling. The collapse disrupted THTC's business and caused property loss.
 {¶ 5} Harrison contacted Indoor Courts to inform them of the problem and to request repairs. Indoor Courts and Rebel re-installed the insulation and liner. However, about two months later, on April 16, 1999, the insulation and liner fell down once more, again disrupting THTC's business and causing additional property damage.
 {¶ 6} At the time of the November 10, 1998 and April 16, 1999 incidents, THTC had a commercial property insurance policy with Auto-Owners. As a result of the two incidents, Auto-Owners paid to THTC $21,895.59 for the November 1998 collapse and $24,490.80 for the April 1999 collapse, for a total of $46,386.39. THTC signed a "Subrogation Receipt" for the November 1998 and April 1999 payments.
 {¶ 7} THTC and Auto-Owners brought a complaint for money damages against Indoor Courts and Rebel, alleging breach of contract (first claim for relief), negligence (second claim for relief), breach of express warranties (third claim for relief), breach of implied warranty of fitness for a particular purpose (fourth claim for relief), and breach of other contractual or tort duties (fifth claim for relief).[1]
 {¶ 8} After answering THTC's and Auto-Owners' complaint, Indoor Courts and Rebel moved for summary judgment against Auto-Owners, arguing that Auto-Owners paid THTC's claims as a "volunteer," and, therefore, it could not pursue a subrogation action against them.
 {¶ 9} The trial court issued a decision finding that Auto-Owners paid THTC's claims as a volunteer and, therefore, could not maintain a subrogation claim against Indoor Courts and Rebel. The trial court subsequently issued an entry awarding summary judgment to Indoor Courts and Rebel.
 {¶ 10} Auto-Owners appeals from the trial court's judgment, raising four assignments of error. We shall address Auto-Owners' first, second and fourth assignments of error first and its third assignment of error last, in order to facilitate our analysis.
Assignment of Error No. 1
"The trial court erred because the November 1998 collapse loss and the April 1999 collapse loss were properly paid under D. Additional Coverage — Collapse."
 {¶ 11} Auto-Owners argues that the trial court erred in awarding Indoor Courts and Rebel summary judgment on its subrogation action on the grounds that Auto-Owners paid THTC's claim as a "volunteer" and, therefore, was not entitled to subrogation. Auto-Owners asserts that Section D of the policy, entitled "ADDITIONAL COVERAGE — COLLAPSE," obligated it to pay THTC's claim; therefore, Auto-Owners contends, it did not pay the claim as a volunteer and thus was entitled to subrogation. We disagree with Auto-Owner's argument.
 {¶ 12} Summary judgment should be granted only when the moving party demonstrates that (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence presented that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 13} "Subrogation" is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." Black's Law Dictionary (7th Ed. 1999) 1440 (second definition). "To be entitled to the right of subrogation, the person who pays money to satisfy the obligation must be under some duty or necessity in order to protect himself from loss; the right cannot extend to a mere volunteer." PIE Mut. Ins. Co. v. Ohio Ins.Guar. Assn. (1993), 66 Ohio St.3d 209, 213. "A `volunteer,' as that term is used with reference to the subject of subrogation, is one who, in no event resulting from the existing state of affairs, can become liable for the debt * * *." 18 Ohio Jurisprudence 3d (2001), 289, Contribution, Indemnity, and Subrogation, Section 57, citing Reed v. Ramey (1947),82 Ohio App. 171.
 {¶ 14} The policy's CAUSES OF LOSS — SPECIAL FORM, states, in relevant part, as follows:
 {¶ 15} "D. ADDITIONAL COVERAGE — COLLAPSE
 {¶ 16} "We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:
 {¶ 17} "1. The `specified causes of loss' * * *, all only as insured against in this Coverage Part[.]
 {¶ 18} "* * *
 {¶ 19} "F. DEFINITIONS
 {¶ 20} "`Specified Causes of Loss' means the following:
 {¶ 21} "* * * windstorm * * *."
 {¶ 22} Auto-Owners quotes Section D.1 of the policy in its brief, but it omits the key word, "only," which we have placed in emphasis above. The omission is critical, because its presence (or absence) substantially changes the policy's coverage terms. The word "only" limits Auto-Owners' liability to collapses caused only by one or more of the risks enumerated in Section D.1.-6. Thus, if the collapse is caused by one of the risks enumerated in Section D.1.-6., and by a risk not
enumerated in that section, then Section D does not provide coverage.
 {¶ 23} Here, Auto-Owners and THTC apparently argue that the damages sustained by THTC's building resulted from a combination of excessive wind and the negligence of, or the breach of express or implied warranties by, Indoor Courts and Rebel regarding the installation of the insulation and liner. If this, in fact, is their argument, then clearly there is no coverage for the loss under Section D of the policy, since it would not be "caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more" of the risks enumerated in that provision. Furthermore, to the extent Auto-Owners would argue that the loss was caused only by excessive wind or windstorm, then Auto-Owners would have been obligated to pay THTC for the loss. But, under those circumstances, Auto-Owners would not have had any right to bring a subrogation action against Indoor Courts and Rebel because those parties could not have been held responsible for any damages sustained by THTC solely on account of excessive wind or windstorm.
 {¶ 24} In light of the foregoing, Auto-Owners' first assignment of error is overruled.
Assignment of Error No. 2
"The trial court erred because there is coverage for the November 10, 1998 collapse loss and the April 16, 1999, collapse loss under B.3.C.(2) of Causes of Loss — Special Form."
 {¶ 25} Auto-Owners argues that the trial court erred in finding it to be a mere volunteer who was not entitled to subrogation; Auto-Owners asserts that it was obligated to pay for THTC's losses in light of the language of one of the exclusions contained in the policy's CAUSES OF LOSS — SPECIAL FORM. That exclusion states in relevant part:
 {¶ 26} "B. EXCLUSIONS
 {¶ 27} "* * *
 {¶ 28} "3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage.
 {¶ 29} "* * *
 {¶ 30} "c. Faulty, inadequate or defective:
 {¶ 31} "* * *
 {¶ 32} "(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction[.]"
 {¶ 33} Auto-Owners argues that there is an ambiguity between the exclusion set forth above and the grant of coverage in Section D. ADDITIONAL COVERAGE — COLLAPSE set forth in the first assignment of error. In support of this argument, Auto-Owners points to the second sentence in Section B.3 of the exclusion listed immediately above, which excepts from that exclusion a loss or damage resulting from a "Covered Cause of Loss." Auto-Owners asserts that Section D provides such a covered cause of loss. We disagree with this argument.
 {¶ 34} As we have stated, if, as Auto-Owners appears to be arguing, the losses THTC sustained were caused by excessive wind or windstorm and breach of contract, negligence, or breach of an express or implied warranty, then Section D of the policy provides THTC with no coverage for the loss. If the losses were caused only by excessive wind or a windstorm, then Auto-Owners would have had a duty to pay THTC, but Auto-Owners could not maintain a subrogation action against Indoor Courts and Rebel for those causes of loss. Furthermore, Auto-Owners fails to specify the ambiguity it claims exists between the exclusion contained in Section B.3.c.(2) of the policy's CAUSES OF LOSS — SPECIAL FORM and the grant of coverage contained in Section D. ADDITIONAL COVERAGE — COLLAPSE. Nor can we see any.
 {¶ 35} Auto-Owners' second assignment of error is overruled.
Assignment of Error No. 4
"The trial court erred because a review of the deposition of Tom Harrison and Kurt Buckingham shows that Rebel and Indoor Courts were aware, construing the evidence most strongly in favor of the nonmoving party, that the insulation and liner would not work in the Harrison Tennis Center."
 {¶ 36} Auto-Owners argues that the trial court erred in finding that it paid THTC as a volunteer because the insulation and liner that Indoor Courts and Rebel installed at THTC's facility was not suitable for its intended purpose and there was no exclusion in the policy for losses arising from an alleged breach of the implied warranty of fitness for a particular purpose. We disagree with this argument.
 {¶ 37} Section B of the policy's CAUSES OF LOSS — SPECIAL FORM states in relevant part:
 {¶ 38} "3. We will not pay for loss or damage caused by or resulting from any of the following. * * *
 {¶ 39} "* * *
 {¶ 40} "c. Faulty, inadequate or defective:
 {¶ 41} "* * *
 {¶ 42} "(3) Materials used in repair, construction, renovation or remodeling[.]"
 {¶ 43} A loss that results from an alleged breach of the implied warranty of fitness for a particular purpose necessarily involves a loss caused by or resulting from faulty, inadequate or defective materials used in repair, construction, renovation or remodeling. Auto-Owners cannot circumvent the clear and unambiguous terms of the exclusion quoted above merely by characterizing the cause of the loss as a breach of an implied warranty of fitness for a particular purpose rather than negligence.
 {¶ 44} Auto-Owners' fourth assignment of error is overruled.
Assignment of Error No. 3
"The trial court erred in granting summary judgment to Rebel and Indoor Courts because the subrogation receipts signed by Harrison Tennis Center demonstrate the intent of coverage by the contracting parties and an assignment of rights to the extent of the payments."
 {¶ 45} Auto-Owners argues that the trial court erred in granting summary judgment to Indoor Courts and Rebel because the subrogation receipts signed in its favor by THTC "stand on their own separate and apart from the insurance contract" and represent an assignment of THTC's rights, to the extent of the amount paid, against Indoor Courts and Rebel. We disagree with this argument.
 {¶ 46} Assuming that the subrogation receipts signed by THTC in favor of Auto-Owners represent an assignment of THTC's rights, Auto-Owners would still have no subrogation rights against Indoor Courts and Rebel. Where an insurer is not entitled to assert any subrogation claim because the loss for which the insurer provided coverage was not covered by the policy, the insured's assignment of the claim does not give it any right to recover against the alleged wrongdoer. 16 Couch on Insurance 3d 222-105, Section 222:65, citing Hartford Fire Ins. Co. v.Payne (1922), 28 Ga. App. 655, 112 S.E. 736.
 {¶ 47} Accordingly, Auto-Owners' third assignment of error is overruled.
 {¶ 48} The trial court's judgment is affirmed.
YOUNG and VALEN, JJ., concur.
[1] THTC and Auto-Owners also brought a sixth claim for relief against five Jane and John Does, alleging breach of contract, negligence, breach of express and implied warranties, and breach of other contractual or tort duties.